Henry C. McClement, Appellant, v. The Supreme Court of the Independent Order of Foresters, Respondent.

Insurance (life) — fraternal benefit insurance society — when member of beneficial association liable for increased assessments under amendments to charter adopted after he joined the society — charter of association incorporated in Dominion of Canada subject to modification, amendment or repeal by subsequent acts of Parliament of Canada.

1. Rights that have become fully vested cannot be taken away by amendment to a corporate charter or the constitution and by-laws of the corporation. Such rights are preserved by our Constitution. Vested rights are not taken away, however, by increasing the amounts of the assessments agreed upon by a fraternal benefit society at the time of issuing to its members certificates of membership and insurance in the society, if the contract of insurance or the charter of the society expressly or otherwise clearly provides that the assessments may be changed from time to time.

2. The charter or articles of incorporation of a beneficial association become a part of the contract of membership when one joins the association as if written therein, and a member is presumed to have joined with knowledge of their terms and conditions.

3. Where the reservation of authority to amend a charter or the constitution and by-laws of a society is clear, the right to have the rate of assessment continued as originally provided is not vested or fixed beyond the possibility of reasonable changes to meet new conditions.

4. The Parliament of the Dominion of Canada is not bound by any written constitution, and its power to repeal or amend any previous act is expressly reserved by the Revised Statutes of the Dominion of Canada, and, hence, a fraternal benefit insurance society incorporated by acts of the Parliament of Canada, and doing business under its charter in this state, is not only governed and controlled by it but is subject to such modifications, restrictions and repeal as shall from time to time seem to Parliament to be required by the public good.

*McClement* v. *Order of Foresters*, 169 App. Div. 77, affirmed.

(Argued January 17, 1918; decided February 12, 1918.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 27, 1915, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Conboy* and *William H. Gilman* for appellant. The plaintiff had a vested right in the contract which the defendant could not impair or alter without his consent. The levy of the extraordinary assessment was an impairment of the plaintiff's contract. (*Wright* v. *Maccabees,* 196 N. Y. 391; *Langan* v. *Legion of Honor,* 174 N. Y. 266; *Beach* v. *Maccabees,* 177 N. Y. 100; *Evans* v. *Southern Tier,* 182 N. Y. 453; *Dowdall* v. *C. M. B. A.,* 196 N. Y. 405; *Boswell* v. *S. L. Ins. Co.,* 193 N. Y. 465; *Kent* v. *Q. S. Mining Co.,* 78 N. Y. 158; *Charman* v. *Knights Templar,* 187 U. S. 197; *Black* v. *Legion of Honor,* 120 Fed. Rep. 580; *Getz* v. *Legion of Honor,* 109 Fed. Rep. 261.) The defendant having come to New York state and made the contract here is bound by the laws of the state of New York. (*McClement* v. *Order of Foresters,* 169 App. Div. 77; *Morgan* v. *Mutual Benefit Life Ins. Co.,* 189 N. Y. 447; *People* v. *Formosa,* 131 N. Y. 478; *Boswell* v. *S. M. L. Ins. Co.,* 193 N. Y. 475; *Milnor* v. *N. Y. & N. H. R. R. Co.,* 53 N. Y. 363; *Dickinson* v. *Edwards,* 77 N. Y. 573; *Vanderbeck* v. *Protected Home Circle,* 98 Misc. Rep. 691; *Stumpf* v. *Hallahan,* 101 App. Div. 383; 185 N. Y. 50.)

*Elliott G. Stevenson, Thomas G. Long, John W. Genaway* and *George H. Cobb* for respondent. The regulation and control of the government of internal affairs and the manner of the exercise of the powers thereof of a cor-

poration which is the creature of and derives its authority from the law of another sovereignty, rests with that sovereignty solely and may not be interfered with by the courts of a state in which the corporation does business or may be found. (*Royal Arcanum* v. *Green*, 237 U. S. 531; *Supreme Lodge* v. *Hines*, 82 Conn. 315; *Supreme Colony* v. *Towne*, 87 Conn. 644; *Palmer* v. *Welch*, 132 Ill. 141; *Grimme* v. *Grimme*, 198 Ill. 265; *American Legion of Honor* v. *Green*, 71 Md. 263; *Royal Arcanum* v. *Brashears*, 89 Md. 624; *Golden Cross* v. *Merrick*, 165 Mass. 421; *Gibson* v. *United Friends*, 168 Mass. 391; *Larkin* v. *Knights of Columbus*, 188 Mass. 22; *Supreme Lodge* v. *Nairn*, 60 Mich. 44; *Tepper* v. *Royal Arcanum*, 59 N. J. Eq. 321; 61 N. J. Eq. 638; *Bockover* v. *Life Association*, 77 Va. 85.) The right to change rates was reserved by legislative authority. (*Lord* v. *E. L. Assur. Society*, 194 N. Y. 212; *Matter of Lee Bank*, 21 N. Y. 9; *Sherman* v. *Smith*, 1 Black, 587; *Gardner* v. *Hope Ins. Co.*, 9 R. I. 194; *Bissell* v. *Heath*, 98 Mich. 472.) Except in so far as a state does impose terms, conditions and restrictions upon the transaction of business within it by a corporation of another state a corporation of the latter state may exercise in the former state all of its powers. (*Merrick* v. *Van Santvoord*, 34 N. Y. 208; *Demarest* v. *Flack*, 128 N. Y. 205.) The act of Parliament is a part of the contract which it made with the plaintiff and that contract should be enforced in all its parts. (*Matter of Globe M. B. Assn.*, 63 Hun, 263; Bacon on Benefit Societies, etc., 201, § 161; *Sabin* v. *Finney*, 134 N. Y. 428; *Shipman* v. *P. H. Circle*, 173 N. Y. 398; *Hammond* v. *Knox*, 125 App. Div. 9; *Ebent* v. *M. R. F. Life Assn.*, 83 N. W. Rep. 506; *Massey* v. *Mutual Relief Society*, 102 N. Y. 523; *Silvers* v. *Benefit Association*, 94 Mich. 39; *Kaemmer* v. *Kaemmer*, 231 Ill. 154; *Knights of Honor* v. *Nairn*, 60 Mich. 44; *Gaines* v. *Royal Arcanum*, 140 Fed. Rep. 978.)

Chase, J.   The only question involved on this appeal is the power of the defendant to charge an extraordinary assessment of $520 against the certificate of insurance held by the plaintiff as a member of the society.   The defendant is a fraternal benefit society.   A declaration of incorporation of the society or order was filed in the office of the provincial register of the Province of Ontario on the 23d day of July, 1881, pursuant to the Revised Statutes of Ontario, 1877, chapter 187.   It was reincorporated by an act of the Parliament of the Dominion of Canada entitled: " An act to incorporate the Supreme Court of the Independent Order of Foresters," assented to May 2, 1889, and known as 52 Victoria, chapter 104. It expressly therein provided: " Nothing herein contained shall be held to .exempt the society from the effect of any legislation hereafter passed by the Parliament of Canada in respect to any insurance powers exercised by friendly societies."   The society has since 1881 maintained its principal office in the city of Toronto. Further acts amending the act of incorporation were passed by said Dominion Parliament in 1896 and 1901.

In the act of 1896 it was expressly provided: " The society shall be bound forthwith and from time to time to make assessments to an amount adequate with its other available funds to pay all obligations created under every such certificate or policy heretofore issued or hereafter to be issued without deduction or abatement." And, " Nothing herein contained shall be held to exempt the society from the effect of any legislation hereafter passed by the Parliament of Canada in respect to assessment or other insurance."

The supreme governing body of the society is a supreme court or lodge constituted of representatives from other courts or lodges formed and governed pursuant to the terms of its charter and the constitution and by-laws adopted by the society.

In 1892 the society applied for and obtained permission to do business in the state of New York which permission still continues. On December 29, 1892, a subordinate court was organized in the city of Watertown, known as · " Court Watertown." On that day the plaintiff, then nearing his thirty-sixth birthday, made application for membership therein and on January 7, 1893, the defendant issued to him a certificate of insurance of $2,000. The contract between the parties consists of the application for membership and insurance, the certificate of insurance, and the constitution and by-laws of the society. All, however, are subject and subordinate to the defendant's charter powers.

The monthly rate of assessment on the plaintiff's certificate as then provided by the defendant's by-laws was $1.60 per month, or eighty cents per month per thousand dollars of insurance. The certificate provided that upon the plaintiff's reaching his seventieth birthday the defendant would pay him an annuity benefit of $200 and the same amount on each subsequent birthday until the full sum of $2,000 was paid less any sum paid on account of total and permanent disability benefit. It also provided for payment upon total and permanent disability and for payment to a beneficiary named, in case of death.

The by-laws among other things provided (Sec. 237) that the plaintiff " Shall pay the same rate of assessment thereafter as long as he remains continuously in good standing in the order and in the same class."

There was also a special agreement indorsed on the back of the certificate which was signed by the plaintiff as follows: " I agree that the constitution and laws enacted by the Supreme Court Independent Order of Foresters as well as any and all amendments thereto which may be adopted from time to time by the said Supreme Court shall be part of this contract." The

application for insurance was signed by the plaintiff in the state of New York and the policy was delivered to him in this state.

In the year 1908 the defendant caused a valuation to be made of its assets and a statement of its liabilities, and it was found that the value of the existing certificates of insurance exceeded the accumulated mortuary fund on hand together with the then present value of future monthly assessments based upon a valuation according to the standard mortuary tables, in the sum of $55,000,000. After this valuation and statement the defendant amended its by-laws and increased its assessments of members. By the increase of assessments made at that time the plaintiff was required to pay a monthly assessment of $1.72 on each $1,000 of insurance instead of eighty cents on each $1,000 of insurance as theretofore. The plaintiff has paid this increased monthly assessment and no question is presented on this appeal relating thereto.

In 1912 the defendant caused a further valuation of its assets and statement of its liabilities to be made. The report thereof showed a deficiency of assets affecting the members who had joined the society prior to 1899 amounting to $25,555,448. In 1913 the Parliament of the Dominion of Canada enacted a statute entitled " An act to consolidate and amend the acts relating to the supreme court of the Independent Order of Foresters and to change its name to ' The Independent Order of Foresters,' " which took effect May 16, 1913. (Chap. 113, Acts of 1913.) The act recites the several acts relating to the order hereinbefore referred to and that the society " Has by its petition prayed that the said acts be consolidated and amended to   *   *   *   empower the said society to provide for any deficiency in the accumulated funds and to create a fraternal fund and department for the relief of its members and dependents."

Among the other provisions of the act is one as follows:

" 4. The society shall ascertain as at the first day of October, 1913, the valuation deficiency in respect of all outstanding mortuary benefit certificates or policies of the members who entered the society under the constitution and laws from time to time in force prior to the first day of January, 1899, and shall apportion such valuation deficiency among the said members in proportion to the amount of the member's mortuary benefit certificates or policies; Provided that the share of the valuation deficiency so apportioned to any member shall not exceed the reserve proper to such member's mortuary benefit certificate or policy according to the Foresters' experience and four per cent annual interest.

" If the Supreme Court of the society at the session to be held pursuant to the provisions of section 12 of this act, by resolution so decides, the society may charge against each such mortuary benefit certificate or policy as an assessment, a sum not exceeding its proportion of the valuation deficiency aforesaid. Such assessment shall thereupon be payable to the society by the member on the first day of October, 1913, or if not so paid shall be a lien or debt against such member's mortuary benefit certificate or policy bearing interest until paid at the rate of four per cent per annum compounded annually and together with the interest shall be deducted by the society out of the moneys or first moneys payable by the society under said mortuary benefit certificate or policy; provided that such interest may at the option of the member be payable in equal monthly installments with the monthly premium or assessments of such member.". Provision was also made for other optional methods of paying such assessments.

The supreme court of the society met in regular session as provided by the act of 1913 and accepted the act by more than a two-thirds vote and pursuant to its terms the act came into force on the day on which such accept-

ance took place and notice and proof thereof was filed with the superintendent of insurance of the dominion of Canada. Acting under the authority of the act of the said Dominion Parliament the supreme court of the defendant at its convention commencing August 26, 1913, by resolution charged the deficiency aforesaid upon the members who had joined the society prior to 1899 and apportioned the same among said members according to the amount of their respective certificates.

The amount so charged to the plaintiff was $520 and that amount was declared a lien and charge on his certificate together with interest at the rate of four per cent per annum from October 1, 1913, to be compounded semi-annually. The plaintiff was given the option of paying the same in cash or in monthly assessments as by the act provided. The plaintiff refused to consent to said extraordinary assessment and this action was brought to set aside the lien and charge of said assessment upon his certificate of insurance.

Rights that have become fully vested cannot be taken away by amendment to a corporate charter or to the constitution and by-laws of the corporation. Such rights are preserved by constitution. Vested rights are not taken away, however, by increasing the amount of the assessments agreed upon by a fraternal benefit society at the time of issuing to its members certificates of membership and insurance in the society, if the contract of insurance or the charter of the society expressly or otherwise clearly provides that the assessments may be changed from time to time.

This court has held in substance that a general power reserved by charter or the constitution and by-laws of a society to amend the same does not authorize an amendment thereof so as to impair rights expressly reserved by contract. (*Parish* v. *N. Y. Produce Exchange,* 169 N. Y. 34; *Weber* v. *Supreme Tent, K. of*

M., 172 N. Y. 490; *Beach* v. *Supreme Tent K. of M.*, 177 N. Y. 100; *Evans* v. *So. Tier M. R. Association*, 182 N. Y. 453; *Ayres* v. *Grand Lodge O. of U. W.*, 188 N. Y. 280; *Boswell* v. *Security M. L. Ins. Co.*, 193 N. Y. 465; *Wright* v. *K. of M.*, 196 N. Y. 391; *Dowdall* v. *Supreme Council C. M. B. Association*, 196 N. Y. 405; *Green* v. *Supreme Council Royal Arcanum*, 206 N. Y. 591.)

The decisions quoted, at least so far as they relate to assessments upon members of beneficiary societies, are based upon a construction of the contract made by the association with its members. Where the reservation of authority to amend a charter or the constitution and by-laws of a society is clear, the right to have the rate of assessment continued as originally provided is not vested or fixed beyond the possibility of reasonable changes to meet new conditions. This court in *Beach* v. *Macabees* (*supra*), referring to a change of assessment by a beneficiary association, say: " If the certificate had provided that the payments therein specified should be subject to such modification as to amount, terms and conditions of payment and contingencies in which the same were payable as the endowment laws of the order from time to time might provide, the amendments would be applicable to existing members." (p, 105.)

It is not necessary to consider whether power was expressly reserved by the society in the contract with the plaintiff to change his rate of assessment because of the conclusion reached by this court that the defendant had power to change the assessments of its members by its charter as amended by the Parliament of the Dominion of Canada. Its charter was obtained as we have already stated pursuant to the Revised Statutes of the Dominion of Canada. We have quoted from the acts the provisions thereof relating to amendments thereto, but the Parliament of the Dominion of Canada is not bound

by any written constitution. Power to repeal or amend every act of the Dominion Parliament is also expressly reserved by the Revised Statutes of Canada proclaimed and published under authority of the act of 49 Victoria, chapter 4, 1886, as follows: " Every act shall be so construed as to reserve to Parliament the power of repealing or amending it and of revoking, restricting or modifying any power, privilege or advantage thereby vested in or granted to any person or party whenever such repeal, amendment, revocation, restriction, or modification is deemed by Parliament to be required for the public good." (Chap. 1, § 47.)

The charter or articles of incorporation of a beneficial association become a part of the contract of membership when one joins the association as if written therein, and a member is presumed to have joined with knowledge of their terms and conditions. (Ruling Case Law, vol. 19, page 1190; *Supreme Lodge K. of P. v. Mims*, 241 U. S. 574; *Supreme Lodge K. of P. v. Smyth*, 245 U. S. 594, decided January 28, 1918.)

The defendant in doing business under its charter was not only governed and controlled by it but was subject to such modifications, restrictions and repeal as should from time to time seem to Parliament to be required by the public good. Its charter is carried with it wherever it goes. Every contract made by it whether in Canada or elsewhere is dependent upon its authority. It is true in this case that the plaintiff is a resident and citizen of the state of New York. In many respects the defendant when doing business in this state is subject to our laws, but its power to contract is dependent upon its charter. In *Supreme Council Royal Arcanum v. Green* (237 U S. 531, 542), reversing this court (*Green v. Supreme Council Royal Arcanum*, 206 N. Y. 591), the court say: " As the charter was a Massachusetts charter and the constitution and by-laws were a part thereof, adopted in Massa-

chusetts, having no other sanction than the laws of that state, it follows by the same token that those laws were integrally and necessarily the criterion to be resorted to for the purpose of ascertaining the significance of the constitution and by-laws." (See *Sauerbrunn* v. *Hartford Life Ins. Co.*, 220 N. Y. 363.) In *Canada Southern Railway Company* v. *Gebhard* (109 U. S. 527, 537) the court say: " A corporation ' must dwell in the place of its creation, and cannot migrate to another sovereignty' (*Bank of Augusta* v. *Earle*, 13 Pet. 588), though it may do business in all places where its charter allows and the local laws do not forbid. (*Railroad* v. *Koontz*, 104 U. S. 12.) But wherever it goes for business it carries its charter, as that is the law of its existence, (*Relfe* v. *Rundle*, 103 U. S. 226), and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere. A corporation of one country may be excluded from business in another country (*Paul* v. *Virginia*, 8 Wall. 168), but, if admitted, it must, in the absence of legislation equivalent to making it a corporation of the latter country, be taken, both by the government and those who deal with it, as a creature of the law of its own country, and subject to all the legislative control and direction that may be properly exercised over it at the place of its creation. Such being the law, it follows that every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and

whatever is done by that government in furtherance of that policy which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony. It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere."

The language quoted from the *Canada Southern Railroad Company* case is applicable to the controversy on this appeal. The defendant's charter is subject to amendment when the Dominion Parliament deems an amendment required for the public good and the plaintiff as a part of the society is bound by such action as he and his associates may take under the charter. He is not only bound by such action as a member of the society but as a policyholder and in his contractual relations with the society.

This court in *Jemison* v. *Citizens' Savings Bank* (122 N. Y. 135, 140) say: "Corporations are artificial creations existing by virtue of some statute and organized for the purposes defined in their charters. A person dealing with a corporation is chargeable with notice of its powers and the purposes for which it is formed, and when dealing with its agents or officers is bound to know the extent of their power and authority. A corporation necessarily carries its charter wherever it goes, for that is the law of its existence."

The charge and lien of the assessment against the plaintiff's certificate of insurance is not a reduction

31

thereof. It is an assessment on account thereof that he can pay in cash or by the more easy terms provided therefor, and pursuant to the terms of the amended charter and the action of the society it is a lien and charge upon the certificate of insurance until paid.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, HOGAN, McLAUGHLIN and CRANE, JJ., concur.

Judgment affirmed.